Christopher H. Bayley (*pro hac vice* forthcoming)
Benjamin W. Reeves (*pro hac vice* forthcoming)
Marshall J. Hogan (SBN 286147)
SNELL & WILMER L.L.P.
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626-7689
Telephone: 714.427.7000
Facsimile: 714.427.7799
Email: cbayley@swlaw.com
breeves@swlaw.com
mhogan@swlaw.com

Attorneys for Tulare 207, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| Tulare 207, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>City of Tulare, California, a political subdivision of the State of California, and UVAG Realty Limited Partnership, a Washington limited partnership,<br><br>Defendants. | Case No.<br><br>**COMPLAINT for:**<br><br>**(1) Breach of Contract;**<br><br>**(2) Declaratory Relief**<br><br>Jury Trial Demanded |

Plaintiff, Tulare 207, LLC ("Plaintiff" or "Tulare 207"), for its complaint against the city of Tulare, California ("City"), and UVAG Realty Limited Partnership ("UVAG," together with City, the "Parties") states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1) and (2), in that this is a civil action between citizens of Arizona and Delaware, on the one hand, and citizens of Washington, California, and Canada, on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

///

4827-4984-0015.5

2. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claim occurred in this district.

**PARTIES**

3. Plaintiff is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona. Plaintiff is a wholly owned subsidiary of IMH Financial Corporation ("IMH"), a Delaware corporation, with its principal place of business in Maricopa County, Arizona

4. Defendant City of Tulare, California, is a political subdivision of the State of California.

5. Defendant UVAG is a Washington limited partnership with its principal place of business in Calgary, Canada.

6. On information and belief, none of the partners of UVAG are citizens of Arizona or Delaware.

**GENERAL ALLEGATIONS**

A. **Plaintiff's Predecessor-in-Interest Lends Approximately $30 Million to Del Valle and Obtains a Blanket Security Interest in All of Del Valle's Assets.**

7. On or about September 13, 2006, IMH Secured Loan Fund agreed to extend credit to Del Valle Capital Corporation, Inc. ("Del Valle") in the original principal amount of $20,400,000.00 (as amended and modified, "Loan") for the development of residential real property in Tulare County, California. Pursuant to various amendments, the principal amount of the Loan was increased to $30,120,349.13.

8. The Loan was made pursuant to, among other things, that certain Promissory Note Secured by Real Property dated September 13, 2006, executed by Del Valle, as maker, and IMH Secured Loan Fund, as payee, which was amended from time to time (as amended and modified, "Note"). A copy of the Note (including all amendments) is attached hereto as **Exhibit A.**

9. The Loan was secured by, among other things, certain real and personal property of Del Valle, then existing and thereafter acquired ("Tulare Property"), pursuant to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixed Filing dated September 13,

2006, executed by Del Valle in favor of IMH Secured Loan Fund, which was amended from time to time (as amended, modified, and as recorded, the "Deed of Trust"). A copy of the Deed of Trust (including all amendments and modifications) is attached hereto as **Exhibit B**.

10. As set forth in the Deed of Trust, the Tulare Property included, among other things, "all of the following types of property…of every kind and nature, now existing and hereafter acquired and arising and wherever located, related to the ownership or operation of the Premises: accounts, deposit or reserve accounts, commercial tort claims, letter of credit rights, chattel paper (including electronic chattel paper), documents, instruments, investment property, general intangibles (including payment intangibles)…contracts, agreements and instruments relating to the Trust Property…security deposits, royalties, refunds, expense reimbursements, reserve or escrow deposits or accounts related to the Trust Property…."

11. IMH Secured Loan Fund properly perfected its security interest in and to the Tulare Property by, among other things, (i) recording the Deed of Trust on September 20, 2006, at Instrument No. 2006-0097055 in the records of Tulare County, California, (*see* Ex. B), and (ii) filing a UCC-1 financing statement with the California Secretary of State on September 26, 2006, at File No. 9789890002, a copy of which is attached hereto as **Exhibit C**.

**B.    The City Agrees to Pay Del Valle Reimbursement Payments and Interest by March 2019.**

12. On or around March 3, 2009, Del Valle and the City entered into that certain Oversized Construction Reimbursement Agreement (the "Agreement") in which the City agreed to the following payment obligations (collectively, the "Reimbursement Obligation"): (i) to reimburse Del Valle for certain improvements made by Del Valle and dedicated to the public, which improvements are known as "oversize" under the provisions of Chapter 8.64 of the City Code of Tulare, and (ii) to pay interest on the remaining principal (*i.e.*, the amount of reimbursements owed) at a variable rate compounded annually as set forth in the Agreement. A copy of the Agreement is attached hereto as **Exhibit D**.

13. In particular, interest would accrue each calendar year under the Agreement at a rate equal to the average annual Local Agency Investment Fund (LAIF) rate of return on City of Tulare Investments from the previous calendar year.

14. The City agreed to pay the Reimbursement Obligation ten (10) years after the date of the Agreement. Accordingly, payment of the Reimbursement Obligation was due on or before March 3, 2019.

15. The Agreement and Reimbursement Obligation fall within the definition of, and are included in, the Tulare Property as described in the Deed of Trust. As such, upon the execution of the Agreement by Del Valle, IMH Secured Fund acquired a valid and enforceable security interest in, and lien again, the Agreement and Reimbursement Obligation by virtue of the Deed of Trust.

**C.  Plaintiff Becomes the Holder of the Note and Deed of Trust Through the Assignments.**

16. Plaintiff became the holder of the Note and Deed of Trust pursuant to, among other things, (i) the Assignment of Deeds of Trust between IMH Secured Loan Fund and IMH Special Asset NT 154, LLC ("IMH NT 154") dated July 6, 2009, and recorded on July 23, 2009, at Instrument No. 2009-0045896 in the records of Tulare County, California, a copy of which is attached hereto as **Exhibit E**, and (ii) the Assignment of Deeds of Trust between IMH NT 154 and Plaintiff dated September 13, 2011 and recorded on September 16, 2011, at Instrument No. 2011-0054317 in the records of Tulare Country, California, a copy of which is attached hereto as **Exhibit F** (collectively, the "Assignments").

**D.  Plaintiff Forecloses on the Loan and Obtains Ownership of the Tulare Property, Including the Reimbursement Obligation.**

17. After Del Valle defaulted on the Loan, Plaintiff exercised its rights under the Note and Deed of Trust to appoint a trustee and sell the Tulare Property. A trustee sale was held on October 14, 2011.

18. Plaintiff foreclosed its interests in and to the Tulare Property on October 14, 2011 and became the owner of the Tulare Property by credit bid pursuant to that certain Trustee's Deed

Upon Sale dated October 14, 2011, and recorded on October 21, 2011, at Instrument No. 2011-006155 in the records of Tulare County, California ("Trustee's Deed"). A copy of the Trustee's Deed is attached hereto as **Exhibit G**.

19. As a result, Plaintiff is the present and sole owner of the Tulare Property, which includes without limitation the Agreement, Reimbursement Obligation, and any right to receive any payment from the City under the Agreement.

**E.    The City Breaches the Agreement by Failing to Satisfy the Reimbursement Obligation.**

20. In a letter dated January 30, 2014, Plaintiff's counsel wrote to the City to demonstrate that Plaintiff, alone, has the right to receive payments under the Agreement, including the Reimbursement Obligation and any other obligation under the Agreement. The City wrongfully refused to recognize Plaintiff's ownership of the Agreement and right to receive payments (including the Reimbursement Obligation) due thereunder.

21. Plaintiff and the City exchanged letters between January 2014 to December 2018 concerning the City's incorrect position. During this time period, the City declined and refused to pay the Reimbursement Obligation to Plaintiff.

22. Through its communications with the City, Plaintiff learned that a third party, UVAG, asserted that the Agreement had been assigned to it and that it alone had the right to receive payments under the Agreement.

23. In a letter dated December 21, 2018, Plaintiff's counsel wrote to the City reminding it that the Reimbursement Obligation was due no later than March 3, 2019, notifying it that Plaintiff intended to promptly enforce the Reimbursement Obligation, and offering to discuss mutually acceptable payment arrangements.

24. As of March 3, 2019, the City owed Plaintiff no less than $1,404,932.16—comprising $1,315,944.23 in principal and $88,987.93 in interest.

25. The City failed to pay Plaintiff any sum on March 3, 2019 and to date has not paid Plaintiff any sum. This failure constitutes a material breach of the Agreement.

26. In a letter dated March 4, 2019, Plaintiff notified UVAG that Plaintiff, and Plaintiff alone, held all rights to the Agreement, including all rights to payment under the Reimbursement Obligation, and demanding the UVAG withdraw any claim to payments under the Reimbursement Obligation.

27. In a letter dated March 8, 2019, Plaintiff wrote to City's counsel making demand that the City pay all amounts due and owing under the Agreement, including the Reimbursement Obligation. A copy of this letter is attached hereto as **Exhibit H**.

28. In a letter dated March 15, 2019, the City's counsel responded to Plaintiff stating "We understand that the competing claims for the above-reference reimbursement have not been resolved. It is the City's intention to interplead the funds no later than March 29, 2019." On information and belief, the same letter was sent to UVAG.

## FIRST CAUSE OF ACTION

(Breach of Contract – Against the City)

29. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

30. The Agreement constitutes a binding written agreement and its terms are incorporated into this Complaint.

31. By entering into the Agreement, the City bound itself to, among other things, pay, perform and discharge the obligations of the Agreement, including without limitation paying the Reimbursement Obligation.

32. Plaintiff has performed all conditions, covenants, and promises required by it on its part to be performed in accordance with the terms and conditions of the Agreement.

33. The City has materially breached the Agreement by failing to satisfy the Reimbursement Obligation.

34. As a result of the City's material breach of the Agreement, Plaintiff has suffered and will continue suffer damages.

35. The City has failed and refused, and continues to fail and refuse, to satisfy the Reimbursement Obligation.

36. By reason of the foregoing, the City is liable in the amount of no less than $1,404,932.16 as of March 3, 2019 plus additional interest accruing through the date of collection.

## SECOND CAUSE OF ACTION

### (Declaratory Relief – Against UVAG and the City)

37. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

38. An actual controversy has arisen and now exists between Plaintiff, UVAG, and the City concerning Plaintiff's and UVAG's respective rights in and to the Agreement. Plaintiff contends it alone holds all rights to the Agreement, including without limitation the right to receive payment under the Reimbursement Obligation. UVAG disputes these contentions and contends that it is the proper payee of the Reimbursement Obligation.

39. Plaintiff desires a judicial determination of its rights with respect to the Agreement, and a declaration that it alone holds all rights to payment under the Reimbursement Obligation.

40. A judicial declaration is necessary and appropriate at this time under the circumstances so that Plaintiff may ascertain its rights under the Agreement, obtain payment under the Reimbursement Obligation, and avoid any further damages.

41. As a result of this controversy, Plaintiff has suffered and will continue to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. On Count One, for damages in favor of Plaintiff, in an amount to be determined at trial, but in no event less than $1,404,932.16, as of March 3, 2019, plus additional interest accruing through the date of collection.

2. On Count Two, for a declaration that Plaintiff alone holds the right to payment under the Reimbursement Obligation, or alternatively that UVAG's interests in the Agreement—if any—are junior and subordinate to Plaintiff's interests.

3. For such other and further relief as the Court deems just and proper.

Dated: April 4, 2019

SNELL & WILMER L.L.P.

By: *Marshall J. Hogan*
Marshall J. Hogan

Attorneys for Tulare 207, LLC

4827-4984-0015.5

- 8 -